UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EAST OF CASCADES, INC., a Washington State Corporation, d/b/a J and Y Investment, LLC, a Delaware Limited Liability Company; JIN H. LEE and TAE IN LEE-SONG, husband and wife, and the marital community comprised thereof; YONG C. KANG and KEUM S. KANG, husband and wife, and the marital community comprised thereof,<br><br>                Plaintiffs,<br><br>    v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>                Defendant. | CASE NO. C09-1516-RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Claims Pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. #10. For the reasons set forth below, the Court GRANTS Defendant's motion.

## II. BACKGROUND

Plaintiffs have filed a Complaint for Wrongful Disallowance of Claims against Defendant Federal Deposit Insurance Corporation ("FDIC") in its capacity as receiver for Westsound Bank

1  ("Westsound"). Dkt #1. Plaintiffs filed three (3) administrative claims against the receivership

2  under the provisions of the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811, *et seq.,* as

3  amended ("FDI Act"), and this action was commenced within 60 days of the disallowance of

4  those claims. Plaintiffs allege the following:

5        Beginning in 1998, Plaintiffs Kang and Lee periodically purchased stock certificates in

6  Westsound. By December 2006, the Kangs owned approximately 17,559 shares of Westsound

7  stock for a total value of approximately $289,733 and the Lees owned 24,516 shares for a total

8  value of approximately $404,514.

9        Plaintiff East of Cascades, Inc., doing business as J and Y Investment, LLC ("J&Y")

10  owns the Federal Way Center Office Building in Federal Way, Washington. On or about May

11  2005, Westsound obtained a leasehold interest of prime office space in J&Y's building. In

12  August 2005, Westsound approved a business loan to Plaintiffs Lee, Kang and J&Y in the

13  amount of $1,500,000. According to a commitment letter from Westsound to Plaintiffs, the

14  collateral for the loan was to consist of the deeds of trust on the personal homes of Kang and Lee

15  and an agreement of a "negative pledge" of the shares of Westsound stock owned by Kang and

16  Lee. Dkt. #1, Ex. A. The letter provided that the "original Westsound Bank Stock Certificates,

17  owned by each party are to remain in the physical possession of Westsound Bank, for the

18  duration of the loan." *Id.* at 2. The letter also provided that Plaintiffs would not permit any

19  other financial lenders of any type from displaying any signage on the exterior of Plaintiffs'

20  building, with the exception of such signage that might already be in place. *Id.* Plaintiffs

21  accepted the commitment letter in order to obtain the business loan and believed that the loan

22  documents signed in connection with the transaction by Westsound and required to be signed by

23  Plaintiffs included the same conditions as the commitment letter.

24

1      In February 2007, the value of Plaintiffs' shares in Westsound stock had increased

2   substantially but Plaintiffs were unable to request, demand, receive, sell, liquidate, or control

3   their individual shares of stock because of the "negative pledge" of their shares of stock pursuant

4   to the commitment letter.  When Westsound began having financial problems in late 2007 and

5   early 2008, Plaintiffs were similarly unable to access their shares of stock.

6      After the FDIC was appointed as the receiver for Westsound, Plaintiffs learned that the

7   loan documents it signed with Westsound did not contain the requirement included in the

8   commitment letter that their Westsound Bank Stock Certificates remain in the physical

9   possession of Westsound.

10     Plaintiffs timely submitted claims to the FDIC as receiver for Westsound.  Jin H. Lee

11  submitted a claim for $503,836.  His proof of claim consisted of the following statement:

> Mr. Lee has a claim for damage against WestSound Bank for the [i]mproper retention of Westsound Bank stock as collateral for the loan Westsound made to [J&Y] [on] or about August of 2005.  The bank wrongly demanded WestSound Bank Stock owned by Mr. Lee as collateral for a loan made to [J&Y] [a]nd thereafter failed and refused to permit Mr. Lee to liquidate any or all [o]f his WestSound Bank stock resulting in a financial loss of $503,836 plus [i]nterest.

Dkt. #1, Ex. B.

   Yong Kang submitted a claim for $368,799.  Mr. Kang's proof of claim consisted of the same statement provided by Mr. Lee, except with the figures adjusted to reflect the value of his claim.  Dkt. #11, Ex. C.

   J&Y submitted a claim for "unknown and unliquidated damages".  Its proof of claim consisted of the following statement:

> [J&Y] has a claim for treble damages, attorneys' fees and costs pursuant to 12 U.S.C. § 1975 for violation of 12 U.S.C. § 1972(1)(C) and (D) (Bank Holding Company Act Anti-Tying Statute) stemming from WestSound Bank tying the providing of property rights and landlord services to WestSound Bank as a condition of making a loan to [J&Y] in connection with a loan made by WestSound Bank to [J&Y] on or about August of 2005.  Damages are currently

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 3

unknown and unliquidated. This claim does not replace or supersede claim no. 500000144-000 previously submitted.

Dkt. #1, Ex. D.

Plaintiffs' claims were disallowed by the FDIC on the basis that they were not proven to acceptability of the Receivership. Plaintiffs timely brought this lawsuit requesting *de novo* review of the disallowance of their claims. Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### III. DISCUSSION

**A. Standard of Review**

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. 556). In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). The Court is not, however, bound to accept the plaintiff's legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50. While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

The Court reviews *de novo* claims filed with, and processed by, the FDIC under its administrative claims process. 12 U.S.C. § 1821(d)(6); *Benj. Franklin S'holders Litig. Fund v. F.D.I.C.*, 501 F.Supp.2d 103, 106 (D.D.C. 2007).

**B. Timeliness**

Defendant filed the instant Motion to Dismiss on October 21, 2010. *See* Dkt. #10. Plaintiffs' response was due November 8, 2010. *See* Local Rule CR 7(d)(3). However, Plaintiffs did not file a response until November 10, 2010. Plaintiffs' counsel's reason for missing the deadline is that he was on vacation and therefore did not learn of Defendant's motion. Dkt. #12 at ¶3. He also expected opposing counsel to notify him in advance of filing any motions. *Id.* at ¶4. Counsel's proffered reasons do not excuse his neglect to comply with this Court's rules. Nonetheless, the Court considers Plaintiff's response and will decide Defendant's motion on the merits.

**C. Newly Alleged Facts**

Defendants move the Court to strike certain allegations that were made in Plaintiffs' responsive briefing but that were not included in Plaintiffs' complaint. In deciding upon a motion to dismiss, a court may consider the allegations set forth in the Plaintiff's complaint. *Twombly,* 550 U.S. at 555 (2007). The question to be decided on a motion to dismiss is the sufficiency of plaintiffs' allegations. *Id.* A court may also consider documents referred to and incorporated in the complaint. *Branch v. Tunnel,* 14 F. 3d 449, 454 (9th Cir. 1994). However, additional factual allegations included in responsive briefing are irrelevant to the Court's task at hand. The Court grants Defendant's request to strike additional material not included in Plaintiff's complaint.

First, Plaintiffs' Response contains the following factual allegation: "[T]he Bank made it mandatory that Plaintiffs agree … that no other lenders of any type … would be allowed to display any signage on the building or property. It was an exclusive requirement excluding all other businesses." However, Plaintiffs attached the Commitment Letter to their complaint, which included an exception to the signage restriction stated above. Specifically, the

Commitment Letter provided that an exception would be made for "signage subject to the above exclusions, which may already be in place." Dkt. #1, Ex. A. Accordingly, factual allegations in Plaintiffs' Response that are inconsistent with the originally-alleged exception to the signage agreement will not be considered by the Court.

Second, Plaintiffs allege in their Response, that "They were not otherwise told by Westsound, which perpetuated the nondisclosure for its own self-interest." Dkt. #11 at 4:3-4. No allegations concerning perpetual disclosure were included in Plaintiffs' complaint and therefore will not be considered by the Court in this Order.

**D. Improper Retention of Stock as Collateral**

Plaintiffs Kang and Lee's claim that Westsound improperly retained their shares of Westsound stock as collateral for their August 2010 loan fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). Plaintiffs admit that they signed the Commitment Letter in which they agreed that their shares of Westsound stock would remain in the physical possession of Westsound for the duration of the loan. Dkt. #1, Ex. A at 2. In consideration for their agreement to forgo access to these shares, Plaintiffs received a loan for 1.5 million dollars. *Id.* at 1.

Plaintiffs appear to allege that, had they known that the restrictions had not been placed in the actual loan documents, they would have sold their shares at a more opportune time and not suffered losses when Westsound failed in 2008. Dkt. #1 at 5-6. Notably, Plaintiffs do not allege that they ever attempted to sell or access their shares of stock and were impeded in any way from doing so. The Court fails to see how these allegations amount to a cognizable legal claim against Westsound: Plaintiffs agreed to surrender certain rights in exchange for a loan. They have not identified any available cause of action under which a plaintiff may sue a defendant for failing to

Commitment Letter provided that an exception would be made for "signage subject to the above exclusions, which may already be in place." Dkt. #1, Ex. A. Accordingly, factual allegations in Plaintiffs' Response that are inconsistent with the originally-alleged exception to the signage agreement will not be considered by the Court.

Second, Plaintiffs allege in their Response, that "They were not otherwise told by Westsound, which perpetuated the nondisclosure for its own self-interest." Dkt. #11 at 4:3-4. No allegations concerning perpetual disclosure were included in Plaintiffs' complaint and therefore will not be considered by the Court in this Order.

**D. Improper Retention of Stock as Collateral**

Plaintiffs Kang and Lee's claim that Westsound improperly retained their shares of Westsound stock as collateral for their August 2010 loan fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). Plaintiffs admit that they signed the Commitment Letter in which they agreed that their shares of Westsound stock would remain in the physical possession of Westsound for the duration of the loan. Dkt. #1, Ex. A at 2. In consideration for their agreement to forgo access to these shares, Plaintiffs received a loan for 1.5 million dollars. *Id.* at 1.

Plaintiffs appear to allege that, had they known that the restrictions had not been placed in the actual loan documents, they would have sold their shares at a more opportune time and not suffered losses when Westsound failed in 2008. Dkt. #1 at 5-6. Notably, Plaintiffs do not allege that they ever attempted to sell or access their shares of stock and were impeded in any way from doing so. The Court fails to see how these allegations amount to a cognizable legal claim against Westsound: Plaintiffs agreed to surrender certain rights in exchange for a loan. They have not identified any available cause of action under which a plaintiff may sue a defendant for failing to

notify the plaintiff that the defendant had not in fact deprived the plaintiff of a benefit that the plaintiff had previously agreed to surrender to the defendant for consideration.

Further, it is not clear from the face of the complaint whether Plaintiffs signed the actual loan documents associated with the Commitment Letter.  However, if Plaintiffs did sign the loan documents, Plaintiffs fail to allege any reason why they were unable to read the terms of the loan agreement to ascertain whether the conditions included in the Commitment Letter reached the loan agreement – let alone why Westsound would be responsible for that failure.  *See Stark v. McCaw,* 8 Wn. App. 378, 381 (Wash. Ct. App. 1973) ("[I]f a person, with a reasonable opportunity to reject offered compensation, takes the benefit of it under circumstances which would indicate to a reasonable man that it was offered with the expectation of services, a contract, complete with mutual assent, results.").  If Plaintiffs did not sign the loan documents, then Plaintiffs ostensibly were only bound by the terms of the Commitment Letter, which did in fact restrict their access to their Westsound shares.  *Id.*  In that case, their understanding concerning their inability to sell their shares would be consistent with the agreement they signed.

In the alternative, Plaintiffs appear to allege that the retention of stock contemplated in the Commitment Letter was in itself "improper."  Again, Plaintiffs fail to identify any cause of action under which it might recover for this impropriety.  In their Response, Plaintiffs for the first time allege that Westsound violated 12 U.S.C.§ 83(a) of the National Banking Act, which provides that "[n]o national bank shall make any loan or discount on the security of the share of its own capital stock."  Even had Plaintiffs properly sought to amend their complaint to include this allegation, doing so would not resuscitate their complaint.  Provisions of the National Banking Act that do not provide an individual cause of action can only be enforced by the federal government.  *Thompson v. St. Nicholas Nat'l Bank,* 146 U.S. 240, 251, (1892) ("it has

been held repeatedly by this court that where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties"). *See Kerfoot v. Farmers' & Merchants' Bank,* 218 U.S. 281, 287, 31 S.Ct. 14, 54 L.Ed. 1042 (1910) (only the government can object to a violation of a prior version of Section 29); *First Nat'l Bank v. Stewart,* 107 U.S. 676, 678, 2 S.Ct. 778, 27 L.Ed. 592 (1883) (only the government can object to a violation of prior version of Section 83). *See also Federal Deposit Ins. Corp. v. Meo,* 505 F.2d 790, 793 n. 2 (9th Cir.1974); *Noel Estate, Inc. v. Commercial Nat'l Bank in Shreveport,* 232 F.2d 483, 485 (5th Cir.1956); *Barron v. McKinnon,* 196 F. 933, 939 (1st Cir.1912). Therefore, Plaintiffs do not have standing to bring a claim against the FDIC under the 12 U.S.C. § 83(a).

Finally, to the extent that Plaintiffs bring a claim for damages under the Commitment Letter with Westsound, Plaintiffs fail to allege that the letter constituted an official bank document upon which bank examiners are entitled to rely. Under the *D'Oench, Duhme* doctrine, bank examiners are entitled to rely on the records of a bank in evaluating the bank's financial condition. *See Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Brookside Associates v. Rifkin*, 49 F.3d 490, 493 (9th Cir. 1995). This principle of equitable estoppel was codified by Congress in 12 U.S.C. § 1823(e), which provides,

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

Therefore, to bring a claim against the FDIC under an agreement that tends to diminish the assets of the corporation, a claimant must allege that the conditions set forth in § 1923 have been satisfied. *Brookside*, 49 F.3d at 493. Plaintiffs have not alleged that the Commitment Letter was approved by Westsound's board of directors or that it was an official record of the institution. Indeed, Plaintiffs' complaint indicates that the Commitment Letter was not an official record, as the "loan documents actually signed by Westsound Bank and required to be signed by all Plaintiffs did not include a provision, clause, restriction, or mandate for the original Westsound Bank Stock Certificates to remain in the physical possession of Westsound Bank, as had been made a condition specified in the commitment letter." Dkt. #1 at ¶ 22. Thus, to the extent that the bank represented to Plaintiffs that the condition concerning stock certificates formed an unwritten condition of the actual loan agreement, this constituted "an arrangement likely to mislead the banking authorities" and cannot support a claim against the FDIC. *Brookside*, 49 F.3d at 494 (9th Cir. 1995)(citing *Langley v. FDIC,* 484 U.S. 86, 92-93(1987).

Because plaintiffs have failed to identify any cause of action available to them for their perceived injuries, because Plaintiffs do not have standing to bring a claim under 12 U.S.C. 83(a), and because Plaintiffs have failed to allege the Commitment Letter may be properly relied upon by banking authorities in evaluating the bank's condition, the Court GRANTS Defendant's Motion to Dismiss with respect to Plaintiffs claims for improper retention of stock as collateral.

**E.  Anti-Tying Provision**

Plaintiffs bring a claim under 12 U.S.C. §1975 for violations of section 1972(1)(C) and (D) of the Bank Holding Company Act, which prohibits illegal tying arrangements.  The relevant sections provide:

> (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement--
>
> ….
> (C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;
>
> (D) that the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; …

12 U.S.C. § 1972(1) (1988).  Plaintiffs allege that the provision in the Commitment Letter which prohibited Plaintiffs from displaying the signage of other financial institutions violated these provisions.  Plaintiffs also appear to allege that Westound conditioned Plaintiffs' loan on the provision of "landlord services" by virtue of Westsound's leasehold interest in Plaintiffs' building, conveyed three months prior to issuing the loan.  *See* Dkt. #1, Ex. D.  Plaintiffs' allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

First, as with Plaintiffs' allegations concerning improper retention of stock, Plaintiffs have failed to allege that the Commitment Letter was approved by the board or was an official document of the bank.  Absent these allegations, or evidence that the same conditions were included in official bank documents, the Court cannot sustain its claim against the FDIC.  *See* 12 U.S.C. § 1823(e); *Brookside*, 49 F.3d at 494.

1    Second, even if Plaintiffs had satisfied the requirements of § 1823(e), Plaintiffs fail to
2 make a cognizable claim under the Bank Holding Company Act's Anti-Tying Provision.  To
3 state a viable claim for violations of § 1972(1)(C), Plaintiffs must show (1) "the banking practice
4 in question was unusual in the banking industry," (2) "an anti-competitive tying arrangement"
5 existed, and (3) "the practice benefits the bank." *Bieber v. State Bank of Terry*, 928 F.2d 328,
6 329 -330 (9th Cir. 1991) (citing *Rae v. Union Bank,* 725 F.2d 478, 480 (9th Cir.1984)). Plaintiffs
7 fail to allege that the practice of restricting competitors' signage was unusual. Further, to state a
8 claim under § 1972(1)(D), a Plaintiffs must show that the bank required that the they "provide
9 some additional credit, property, or service *to a bank holding company*" (emphasis added).
10 Plaintiffs have made no such allegations.  Defendant's Motion to Dismiss with respect to
11 Plaintiffs' illegal tying claims is GRANTED.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant's Motions to Dismiss (Dkt. #10) is GRANTED.  Plaintiffs' claims are dismissed with leave to amend.  Plaintiffs may file an amended complaint curing the above deficiencies by March 18, 2011.  The amended complaint must carry the same case number as this one.  If Plaintiffs do not file an amended complaint by March 18, 2011 this action will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

Dated this 18th day of February 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE